JEFFERSON *v.* KERN.

1. FRAUDS, STATUTE OF—VOID CONTRACT FOR SALE OF LAND CANNOT BE RATIFIED.

A contract for the sale of land void under the statute of frauds is a nullity and cannot be ratified.

2. SAME.

Where a real estate broker had neither written or oral authority to sell defendant's land, a contract entered into between the broker and another for the sale of the land was a nullity, which could not be ratified by defendant.

3. SAME—RECEIPT FOR MONEY PAID INSUFFICIENT TO CONSTITUTE A CONTRACT.

A receipt given by defendant to the broker acknowledging the receipt of $50 on the sale of said land, but which was not certain and definite as to the parties, property, consideration and time of performance was insufficient, under the statute of frauds, to constitute a contract for the sale of the land.

4. SAME—LAW RATHER THAN EQUITIES CONTROL.

A contract for the sale of land, void under the statute of frauds, must be controlled by the law rather than the equities of the parties, especially where neither party dealt with the other in the open and frank manner that he should.

Appeal from Wayne; Mandell (Henry A.), J.   Submitted January 5, 1922.   (Docket No. 37.)   Decided July 20, 1922.

Bill by Joseph R. Jefferson against Christian Kern for the specific performance of a land contract. From the decree rendered, both parties appeal.   Reversed, and bill dismissed.

*Denby, Kennedy & O'Brien,* for plaintiff.

*John B. McIlwain* and *Dennis P. Sullivan,* for defendant.

BIRD, J. Plaintiff filed this bill praying for specific performance of a contract which he claimed he had with defendant to convey to him 20 acres of land situate in Wayne county. Upon the hearing the chancellor found plaintiff was entitled to relief, but, it appearing that defendant had in the meantime conveyed the land to another, it was decreed that defendant should pay plaintiff as damage the sum of $500 and return the $50 which plaintiff had paid on the contract. The defendant denied that he had ever made any such contract with plaintiff. He lives in Port Huron and plaintiff resides in Detroit. It appears that some time previous to these dealings Mr. Frank Andrus, who resides in Detroit, had, on some occasion, talked with defendant about selling the land in question. On March 5, 1919, Andrus addressed the following letter to defendant:

"Some time ago you gave me a memoranda of your property in the village of Wayne, but I have misplaced it. Today a man was in my office who is dealing somewhat in real estate in that vicinity and I mentioned your property. He asked me to obtain a description of it and the price and the terms upon which you would sell and he would try and make a sale.

"If you still have the property and desire to sell it, please furnish me the information and I will try and find a customer for you."

Defendant replied to this on March 8th, as follows:

"Your favor of the 5th inst. received asking for price, terms and description of the twenty acres in Wayne of which I spoke to you some time ago.

"The price I am selling it at is twenty-five hundred dollars, with a payment of one-half cash or more. (Description here given.)

"Should you be able to make a sale I will allow you five per cent. commission. This agreement to hold good for thirty days.

"The next time I am in Detroit I will call and see you, if possible. Hope to hear from you again."

Nothing further passed between the parties until March 27th, when Andrus wrote to Kern:

"I have been negotiating with a man, who himself is a real estate agent, for the sale of your twenty acres near Wayne, and when I saw him on last Tuesday he was quite confident that he had a purchaser.

"Inasmuch as I have to make a trip to Texas, to be gone about ten days, it is possible we may not be able to close out the deal. If his purchaser is ready to purchase before I go. I shall return about the 10th of April; but while I am gone the matter will have to stand in abeyance, and, therefore, I wish you to extend the time of my option until May first, or at any rate, give me ten or fifteen days after my return to close out the deal, in case he has a purchaser. He feels quite confident that the sale will go through."

Defendant Kern did not reply to this letter.

On April 5th plaintiff, Jefferson, paid Andrus $50 and took from him the following receipt and agreement:

"Received from Joseph R. Jefferson the sum of fifty dollars to apply upon the purchase price of the following land situate in Nankin township, Wayne county, Michigan, to-wit:

"The north half of the north half of the north half of the southeast quarter of section 20, containing twenty acres of land, more or less, which land he has purchased this day for the sum of twenty-five hundred dollars, payable as follows: Twelve hundred and fifty ($1250) dollars, or more, cash on delivery of deed, and a mortgage back for the balance, payable on or before one year from date, with interest at the rate of six per cent. per annum. Abstract to be furnished written to date showing a good and merchantable title in Christian Kern.

"C. KERN,
"By FRANK D. ANDRUS,
"Agent."

Two days later, on April 7th, Andrus and plaintiff went to Port Huron to see defendant. While there

Andrus paid defendant the $50 which he had received from Jefferson, and took a receipt, which reads:

"Port Huron, Mich.,
April 7, 1919.
"Received of Frank D. Andrus, fifty dollars to apply on the purchase price of twenty acres.
"$50.                                    C. KERN."

Andrus claims that he showed defendant the contract he had made with Jefferson and that he, Kern, expressed himself satisfied and accepted the $50 in approval and ratification of it.   The defendant denies that he saw the agreement or that it was mentioned, and says that he had no knowledge of such an agreement.   He says he told Andrus he could not accept $50 because the sale of the land was in the hands of his attorney, Mr. Sullivan.   That he called Sullivan, at the time, on the 'phone but could not get him.   That owing to the insistence of Andrus he accepted the $50 conditionally until he could see Sullivan.   That if he found the property had been sold when he saw Sullivan he would return the money.   Defendant further claims that he later learned from Sullivan that the land had been sold and he then tendered the $50 back but it was not accepted.

On May 14th following Jefferson tendered to the defendant the balance of the purchase price, $2,450, and demanded a conveyance.   This was refused by defendant Kern and Jefferson then commenced this suit to enforce his claim.

Plaintiff does not claim that the contract made by Andrus and himself bound defendant in any way until he ratified and approved it by accepting the $50-payment and receipting therefor.   The defendant's position is that the contract made between Andrus and Jefferson was void, made so by the statute of frauds, and that the holdings of this court are to the effect that a void contract cannot be ratified.   That nothing short of a new contract would satisfy the statute.

1. It is conceded the contract made by Andrus did not bind defendant. Andrus could not bind defendant because he had never been authorized in writing by defendant to convey the land. 3 Comp. Laws 1915, § 11975. It is, therefore, plain that when Andrus and plaintiff went to Port Huron to see defendant they had no binding contract. What did defendant do in that interview which amounted to a ratification? He accepted the money from Andrus, he says, conditionally, which Andrus had received from Jefferson, and gave a receipt therefor in writing. The receipt did not run to the plaintiff but to Andrus and no reference is made in the receipt to Jefferson. It, therefore, appears that defendant had given plaintiff no writing concerning the land. Plaintiff says defendant indicated he was satisfied with the sale, accepted the money and, therefore, ratified the contract. The only contract made was void as to defendant, under the statute of frauds (§ 11975). This court has held repeatedly that a void contract cannot be ratified. There is nothing to ratify. It is a nullity. *Hillebrands* v. *Nibbelink,* 40 Mich. 650; *Sutton* v. *Rowley,* 44 Mich. 113; *Raub* v. *Smith,* 61 Mich. 543 (1 Am. St. Rep. 619) ; *Ferle* v. *City of Lansing,* 189 Mich. 506 (L. R. A. 1917C, 1096).

In the last-named case it was said:

"And a contract made void by charter or by statute cannot be ratified—there is nothing to ratify—nor can any recovery be had upon it. The courts will leave the parties as it finds them; and if it is a contract of sale, an action cannot be maintained for the value of goods delivered under it."

Under these authorities plaintiff's theory of ratification must fail. It then remains to be seen whether the negotiations at Port Huron amounted to a new contract. Defendant was the party to be bound. In order to bind defendant he must have signed some

writing which should be certain and definite as to the parties, property, consideration and time of performance. The receipt, the only paper signed by defendant, satisfies none of these requirements, and that was not even given to the plaintiff, but was given to Andrus.

Our attention is called to the case of *Hammond* v. *Hannin*, 21 Mich. 374 (4 Am. Rep. 490). In that case the vendee's name was signed to a contract for the purchase of land by her husband under an oral agreement. Subsequently the contract was executed, or nearly so, and the vendee went into possession and it was held that that was a ratification, although Mr. Justice COOLEY expresses some doubt on the question. It is said:

"The defendant objected to oral proofs of the authority by the plaintiff to her husband to sign the contract on her behalf, but the objection was overruled. If this evidence had been all that appeared to connect the plaintiff with the contract, I should not be satisfied of the correctness of this ruling. Our statute of frauds requires the authority of the agent acting for another in the sale of lands to be in writing, and though perhaps a strict construction of the section would confine its operation to the agent of the vendor alone I am inclined to think that by necessary implication the authority of the agent of the vendee is to be evidenced in the same manner. It was not essential, however, that the contract should be under seal, and an oral ratification of it afterwards was sufficient."

In the case under consideration the agent had no written authority to convey the land, nor did he have any oral authority. The only authority he had was to secure a purchaser. In this case the contract was executory while in the case cited the contract had been practically executed, and the vendee was in the possession of the premises.

2. A considerable portion of the briefs of both parties has been devoted to discussing the respective

equities of the parties. We are impressed that neither party is entitled to very much consideration upon that phase of the case. A reading of the record does not convince us that either party dealt with the other with the open and frank manner that he should, but this is not of much importance as the legal situation must control it.

The decree of the lower court must be reversed and plaintiff's bill be dismissed, with costs of both courts to the defendant.

FELLOWS, C. J., and WIEST, CLARK, SHARPE, MOORE, and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.