DeWald v ISOLA

Docket No. 105781. Submitted May 2, 1989, at Lansing. Decided
    September 6, 1989.

Defendants, Amy L. Isola and Beth L. Isola, inherited as tenants
    in common a parcel of real property and decided to sell the
    property. They listed the property with a licensed real estate
    broker by signing a standard listing agreement. Plaintiff, Je-
    rome E. DeWald, submitted a purchase offer. Beth accepted the
    offer by signing the purchase agreement. Amy was contacted by
    telephone by an agent of the real estate broker and informed of
    plaintiff's offer. Defendants maintain that Amy did not tell the
    agent that she intended to accept the offer but, rather, that she
    requested an opportunity to review the offer. An agent of the
    broker printed "Amy Isola, per ph call, 10-20-87" on the line
    reserved on the purchase agreement for the seller's signature
    and thereafter told plaintiff that Amy had orally agreed to
    accept the offer. After Amy later refused to sign or accept the
    offer, plaintiff brought an action in the Ingham Circuit Court
    alleging breach of contract and requesting specific performance
    and injunctive relief. The trial court, Peter D. Houk, J., issued
    a temporary restraining order and ordered defendants to ap-
    pear in court. Defendants' counsel telephoned plaintiff's coun-
    sel, Bernard Finn, and allegedly informed him that case law
    and the statute of frauds rendered plaintiff's claim meritless.
    Following further discussions between the attorneys, a hearing
    was conducted. Thereafter, the trial court dissolved the tempo-
    rary restraining order, denied plaintiff's request for a prelimi-
    nary injunction, granted defendants' motion for summary dis-
    position, and denied defendants' motion for sanctions. Defen-
    dants appeal from the denial of their motion for sanctions.

The Court of Appeals held:

1. The trial court's finding that plaintiff's claim was not
    frivolous on the ground that plaintiff's legal position was devoid
    of arguable legal merit was clearly erroneous and must be
    reversed.

2. For reasons which are basic, longstanding, and unmistak-

REFERENCES

Am Jur 2d, Attorneys at Law § 120; Statute of Frauds §§ 59-66.
See the Index to Annotations under Frauds, Statute of; Pleadings.

ably evident in statutory and common law, and which were several times brought to plaintiff's counsel's attention, it should have been obvious to plaintiff's counsel that the claims for breach of contract and specific performance were wholly meritless. A reasonable inquiry by plaintiff's counsel would have revealed the meritless nature of the claims.

3. The trial court's denial of defendants' motion for sanctions is reversed and the case is remanded for the assessment and imposition of sanctions.

Reversed and remanded.

1. FRAUDS, STATUTE OF — REAL PROPERTY — THIRD PARTIES.

The necessity of a written authorization in order to bind an individual to the terms of a purchase agreement for real property signed by a third party is clearly set forth in the statute of frauds (MCL 566.106; MSA 26.906).

2. COMMON LAW — ORAL PROMISE TO SELL LAND — THIRD PARTIES.

It is well settled in the common law that an oral promise to sell land is not enforceable and that a contract to sell property signed by a third party for the owner but without the written authorization of the owner is not enforceable.

3. ATTORNEY AND CLIENT — PLEADING — ATTORNEY'S INQUIRIES REGARDING PLEADINGS.

Every attorney has an affirmative duty to conduct a reasonable inquiry into the viability of a pleading before it is signed.

*Sinas, Dramis, Brake, Boughton, McIntyre & Reisig, P.C.* (by *Bernard F. Finn*), for plaintiff.

*Livorine & Wells, P.C.* (by *R. Richard Livorine* and *Jeffery W. Wells*), for defendants.

Before: WAHLS, P.J., and WEAVER and CAVANAGH, JJ.

PER CURIAM. Defendants, Amy Lynn Isola and Beth Lynn Isola, appeal as of right from a December 19, 1987, order of the Ingham Circuit Court denying their motion for sanctions against plaintiff, Jerome E. DeWald, and plaintiff's counsel, Bernard F. Finn, pursuant to MCR 2.114, 2.625(A)(2), and MCL 600.2591(3)(a)(iii); MSA

27A.2591(3)(a)(iii). We reverse and remand the case for the assessment and imposition of sanctions.

The record reveals that defendants inherited as tenants in common a parcel of real property situated in East Lansing and in September, 1987, decided to sell the property in order to finance their college educations. They listed the property with Tomie Raines, Inc., a licensed real estate broker, by signing a standard listing agreement. On October 19, 1987, plaintiff submitted a purchase agreement to acquire the property under the terms of which payment of $20,000 was to be made in cash and $57,000 was to be made in installments over a five-year period. Beth accepted plaintiff's offer by signing the purchase agreement. Amy, who was living and attending college in the Upper Peninsula of Michigan, was contacted via telephone by an agent of the real estate broker and informed of plaintiff's offer. Defendants maintained in the trial court that Amy did not tell the agent at that time that she intended to accept the offer, but, rather, that she requested an opportunity to review it before deciding whether to accept or reject it. Accordingly, a copy of the purchase agreement was mailed to her. In any event, an agent of the real estate broker, Anthony Juliano, printed "Amy Isola, per ph call, 10-20-87" on the line reserved on the purchase agreement for a seller's signature and thereafter told plaintiff that Amy had orally agreed to accept the offer. After Amy later refused to sign the purchase agreement or accept the offer in any manner, plaintiff filed the present lawsuit on December 1, 1987, alleging breach of contract and requesting specific performance and injunctive relief. On December 2, 1987, the trial court issued a temporary restraining order enjoining defendants from selling, transferring, or otherwise encumbering the title to their

property in East Lansing. In addition, the trial court ordered defendants to appear in court at 8:30 A.M. on Monday, December 7, 1987, to show cause "why this Temporary Restraining Order should not be made a Preliminary Injunction."

On December 3, 1987, defendants' counsel telephoned Bernard Finn, plaintiff's attorney, and allegedly informed him that case law and the statute of frauds rendered plaintiff's claim meritless. In defendants' appellate brief it is stated that "[c]ounsel for the Isolas specifically cited the case law their research had disclosed, even to the point of reading certain dispositive passages over the telephone." On the following day, December 4, 1987, defense counsel again telephoned Mr. Finn and, according to defendants' appellate brief, "informed him that, unless the Complaint was immediately withdrawn, the Isolas would seek sanctions . . . on the basis that the action was frivolous." The complaint was not withdrawn, and defendants were granted permission to deliver their pleadings to the trial judge at his home on Saturday, December 5, 1987. On that day, defendants' pleadings, including a response to plaintiff's order to show cause, an answer and affirmative defenses, a motion for summary disposition, and a motion for sanctions, were delivered to the trial judge and to the office of Mr. Finn. No responsive pleadings were filed by plaintiff. On Monday, December 7, 1987, a hearing was conducted and the trial court dissolved the temporary restraining order, denied plaintiff's request for a preliminary injunction, granted defendants' motion for summary disposition, and denied defendants' motion for sanctions.

On appeal, defendants argue that the trial court erred in denying their motion for sanctions, arguing that "the original claim by [plaintiff] was made without basis in any legal authority, was plainly

contrary to existing authority, and was otherwise devoid of arguable legal merit, thereby rendering it 'frivolous' for purposes of MCL 600.2591 [MSA 27A.2591] and the court rule[s], [MCR 2.114, 2.625(A)(2)]." These statutory and court-rule provisions state in pertinent part:

(1) Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

(2) The amount of costs and fees awarded under this section shall include all reasonable costs actually incurred by the prevailing party and any costs allowed by law or by court rule, including court costs and reasonable attorney fees.

(3) As used in this section:

(a) "Frivolous" means that at least 1 of the following conditions is met:

(i) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

(ii) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.·

(iii) The party's legal position was devoid of arguable legal merit.

(b) "Prevailing party" means a party who wins on the entire record. [MCL 600.2591; MSA 27A.2591.]

(B) Signature Requirement. Every pleading of a party represented by an attorney shall be signed by at least one attorney of record. A party who is not represented by an attorney must sign the pleading.

\* \* \*

(E) Sanctions for Violation. If a pleading is signed in violation of this rule, the court, on the

motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including reasonable attorney fees.

(F) Sanctions for Frivolous Claims and Defenses. In addition to sanctions under this rule, a party pleading a frivolous claim or defense is subject to costs as provided in MCR 2.625(A)(2). [MCR 2.114.]

(2) Frivolous Claims and Defenses. In an action filed on or after October 1, 1986, if the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591; MSA 27A.2591. [MCR 2.625(A).]

In this case, defendants argued below that plaintiff's claim was "frivolous" because plaintiff's legal position was "devoid of arguable legal merit." We believe that the trial court's finding that plaintiff's claim was not frivolous on this ground is clearly erroneous and must be reversed. See *Burke v Burke,* 169 Mich App 348, 352; 425 NW2d 550 (1988); MCR 2.613.

The statute of frauds provides:

> No estate or interest in lands, other than leases for a term not exceeding 1 year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by some person thereunto by him *lawfully authorized by writing.* [Emphasis added. MCL 566.106; MSA 26.906.]

Thus, the notation, "Amy Isola, per ph call, 10-20-87," of the real estate agent on the purchase

agreement for the sale of defendants' property to plaintiff could not obligate Amy to sell her interest in the property unless the agent was "lawfully authorized by writing" to so obligate her. Plaintiff never established, suggested, or even alleged that the agent was "authorized by writing" to act for Amy regarding the sale of her interest in the property. The necessity of a written authorization in order to bind an individual, such as Amy, to the terms of a purchase agreement signed by a third party, such as Amy's real estate agent, is clearly set forth in the statute of frauds. Moreover, it is well settled in the common law that an oral promise to sell land is not enforceable and that a contract to sell property signed by a third party for the owner but without the written authorization of the owner is not enforceable. See, e.g., *Taylor v Boardman,* 24 Mich 287 (1872); *Dickinson v Wright,* 56 Mich 42; 22 NW 312 (1885); *Raub v Smith,* 61 Mich 543; 28 NW 676 (1886); *Collar v Collar,* 86 Mich 507; 49 NW 551 (1891); *Baldwin v Schiappacasse,* 109 Mich 170; 66 NW 1091 (1896); *Jefferson v Kern,* 219 Mich 294; 189 NW 195 (1922); *Landskroener v Henning,* 221 Mich 558; 191 NW 943 (1923); *Weinburgh v Saier,* 303 Mich 640; 6 NW2d 921 (1942); *Crane v Kangas,* 53 Mich App 653; 220 NW2d 172 (1974).

Defense counsel maintains that, in addition to having advised Mr. Finn by telephone on December 3 and 4, 1987, of the requirement of a writing in the statute of frauds and in the common law, he delivered to Mr. Finn's office on December 5, 1987, a copy of his brief in which the statutory and common-law authority was explicitly set forth. Nevertheless, at the December 7, 1987, hearing, Mr. Finn responded with no competent and published authority either to support plaintiff's position or to rebut defendants'. Apparently, the

groundlessness of plaintiff's case became apparent to plaintiff's counsel at some point, however, since at the December 7, 1987, hearing, he conceded that defendants were entitled to summary disposition.

For reasons which are basic, longstanding, and unmistakably evident in statutory and common law, and which were, several times, brought to the attention of plaintiff's counsel immediately after suit was filed against defendants and well before the December 7, 1987, hearing requested by plaintiff, it should have been obvious to plaintiff's counsel that the claims for breach of contract and specific performance against defendants were wholly meritless. A reasonable inquiry by plaintiff's counsel at any time, before, during, or after the filing of the complaint, as to the viability of plaintiff's case against defendants would have revealed the meritless nature of the claims. Every attorney has an affirmative duty to conduct a reasonable inquiry into the viability of a pleading before it is signed. *Briarwood v Faber's Fabrics, Inc,* 163 Mich App 784, 792-795; 415 NW2d 310 (1987); *Hicks v Ottewell,* 174 Mich App 750; 436 NW2d 453 (1989); *Davids v Davis,* 179 Mich App 72; 445 NW2d 460 (1989). Defense counsel, at the Monday, December 7, 1987, hearing, emphasized the inconvenience which he, defendants, and the trial court itself had suffered due to the filing of plaintiff's meritless claim:

> I received this on Thursday afternoon. This is the only asset that these girls have. We had to move quick. We couldn't take it as cavalierly as apparently the Plaintiff does. Is Your Honor going to let a Plaintiff take up the Court's time on an ex-parte TRO, roust you out of your day? . . . Force us to show cause in three days. Send us into the library at all hours of the night . . . . [Plaintiff's counsel, Mr. Finn,] waltzes in here at 8:30 [this] morning and tells Your Honor now, well, because

of mystical circumstances, I guess I was wrong in asking for a TRO. I guess I was wrong in requesting a preliminary injunction. So I submit to the Court that there is a case for sanctions here which is supported both by the Michigan Court Rules in the making of [a] frivolous claim and the 1986 statute we cite with the real and substantial cost that these two Defendants have incurred on a lawsuit which the Plaintiff's counsel now seems to stand here himself and say has no basis in law.

I would also like to reiterate on the record some of the points that I made in chambers that also go to this issue. We gave our opponent an opportunity to withdraw this without sanctions. I called him Thursday. We offered up our own law that we had done the research on and said have you looked at these cases, Mr. Finn? They seem to us dispositive. Never heard back from him. We offered to deliver our pleadings to him Friday night or Saturday or Sunday . . . . We brought it to Your Honor's home at 9:00 o'clock Saturday morning. He didn't even want to see it.

We note that not only did plaintiff's counsel fail to cite any substantive authority for his position in the lower court, but he also failed to cite any such authority in his brief on appeal. The only two cases cited in plaintiff's appellate brief concern the standard of review which this Court should apply to the circuit court's finding that sanctions were inappropriate.

In sum, we are left with no doubt that the trial court erred in denying defendants' motion for sanctions against plaintiff and his attorney pursuant to MCR 2.114, 2.625(A)(2), and MCL 600.2591(3)(a)(iii); MSA 27A.2591(3)(a)(iii). Accordingly, we reverse the trial court's denial of defendants' motion and remand the case for the assessment and imposition of sanctions in accordance with statute and court rule.

Reversed and remanded. Costs to defendants. We do not retain jurisdiction.