CASE 57.—ACTION BY OTTIS GRAGG AGAINST HOME IN-
          SURANCE COMPANY OF NEW YORK.—February
          12, 1908.

## Gragg v. Home Insurance Co. of New York.

Appeal from Pulaski Circuit Court.

Judgment for plaintiff, and defendant appeals.—
Reversed.

1.  Insurance—Transfer of Policy—Consent of Company.—Where the title to insured property is tranferred, without the consent of the company, it is not liable to the transferee of the property for loss occasioned to the property unless it consented to the transfer.

2.  Agent—Revocation of Authority of—Notice.—The same character of notice is required to inform the public of the revocation of an agency as is necessary to give information of the dissolution of a partnership. A distinction is made as to the character of the notice between persons who dealt with the agent before the revocation and persons dealing with him after the revocation.

3.  Agent—Revocation of Authority.—Where one who has been acting as a general agent of an insurance company, but whose agency has been revoked, consents to the transfer of a policy, and the parties to the transfer do not know of the revocation of his agency, and the company has not given such notice of the revocation of his authority as is necessary to put the public upon notice, it will be bound by his acts.

MORROW & MORROW for appellant

V. P. SMITH for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

In February, 1904, the defendant company issued a policy of fire insurance to Mrs. B. E. Gragg, insuring her property against loss or damage by fire for one year. The policy was issued by Harry Wait, who was the agent of the company at Somerset, Ky., at which place Mrs. Gragg and her son, the appellant, lived. In May, 1904, Mrs. Gragg sold and conveyed the property covered by the insurance policy to her son, the appellant. In September, 1904, the property was destroyed by fire, and the company refusing to pay the insurance, this action was brought. For defense, the company relied upon a clause in the policy providing that: "This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void if any change other than by death of insured take place in the interest, title or possession of the subject of the insurance—whether by legal process, or judgment, or by volunteer act of the insured, or otherwise."

In avoidance of this defense, appellant set up that on May 2, 1904, the company by its agent Harry Wait, consented and agreed that the policy might be transferred to appellant. To this, the reply was made that Wait at the time of the alleged consent was not the agent of the company.

There is some question whether or not the policy was transferred by Wait—purporting to act for the company—to appellant; but passing this issue as immaterial, the principal questions in the case are whether or not Wait had any authority to make the transfer, and whether or not the company consented to it.

It is admitted that in March, 1904, Wait was discharged or removed as agent, and Denton & Robinson, who also had an office as insurance agents in Somerset, were appointed agents in his place. Appellant, confronted by this fact, sought to escape the effect of it by attempting to show that although Wait had been removed by the company and other agents appointed in his place, yet he continued to act as agent in the settlement of policies that were issued by him; that Wait at the time he made the transfer on the policy notified the company of the fact, and further, that appellant had no notice that Wait had been removed as agent, and in good faith believed he had authority to make the transfer.

The company denied that it had any notice or information that the policy had been assigned or transferred to appellant, or that Wait transacted any business for it as agent after his removal.

The office of Denton & Robinson was only a short distance from that occupied by Wait, and appellee contends that in a city the size of Somerset appellant knew, or might have known, of Wait's removal and the appointment of Denton & Robinson, and that considering the evidence introduced upon the subject of Gragg's knowledge of Wait's removal, it was a question for the court and not the jury, to say whether he had or not notice of this fact. Entertaining this view the lower court refused to submit this issue to the jury, but instructed them that Wait was not the agent of the company at the time the transfer of the policy was made; and that they should find a verdict for the company unless they believed from the evidence that at or before the time of the sale of the property Mrs. Gragg assigned her interest in the policy to appellant, and that be-

fore the fire the company had knowledge of such assignment and consented thereto, or ratified or acquiesced in the action of Wait in transferring the policy.

Appellant complains of this instruction, and also of the refusal of the trial court to give the following instructions asked for by him:

"(1) If you believe from the evidence in this case that the defendant company or its agents had or received knowledge or information before the fire that Mrs. Gragg had sold and conveyed the property mentioned in the policy to appellant, Ottis Gragg, and had assigned and transferred said insurance policy to him, then the law is for the plaintiff and you will so find; and unless you so believe, you will find for the defendant.

"(2) If you believe from the evidence in this case that the defendant, Home Insurance Company, had held Harry Wait out to the general public as its agent for the purpose of transacting its business, and that the defendant at the time he was removed as agent failed to notify the general public, and persons with whom he had previously dealt that Wait was no longer the agent of defendant, and that the plaintiff, Ottis Gragg in good faith and without notice to the contrary believed Wait to be the agent, and Wait signed the transfer of the policy on May 2, 1904, then the law is for the plaintiff and you will so find."

The first instruction offered by appellant did not correctly present the law of the case. The mere fact that the company might have had knowledge or information that Mrs. Gragg had assigned the policy to Ottis Gragg did not bind it, as under the provisions of the contract of insurance the company's liability

after the transfer depended upon the fact that it consented to it. It could only be bound by its consent to the transfer, not by its knowledge that it had been made. The company, if the application had been made to it, might have declined, as it had the right, to consent to the transfer, and have elected to cancel the policy. In any event, the change in the title rendered the policy void, unless consented to by the company; and this feature, indispensable to a recovery by appellant, was entirely omitted from instruction number one offered by him.

The second instruction, although defective in form, presented a question at issue which appellant was entitled to have submitted to the jury.

Wait had been acting as general agent for the company at Somerset, and before his removal as agent had the power and authority to bind the company by consenting to the transfer of the insurance; and although he was removed as agent before the transfer was made, yet, if as between the company and appellant he may be treated as agent, the company is bound by his act. So that the question is, what notice, if any, was appellant entitled to as one of the general public, that Wait had been removed as agent? The policy had been issued by Wait as agent, and it was entirely reasonable that appellant with knowledge of this fact should have gone to him to have it transferred. He testifies that he believed that Wait was the agent, and he did not know of his removal. Whether this statement is true or not, we express no opinion. The law applicable to cases of this character is not of doubtful import. On the contrary, certain principles governing the relation of principal and agent in dealings with third parties are generally recognized as correct.

In Mechem on Agency, section 224, it is said:

"Where a general authority is shown to have existed, it may   be presumed to   continue until it is shown to have been revoked, and persons who have dealt with the agent as such, or who have had notice of his authority, may very properly expect that if the authority be withdrawn they will be given reasonable and timely notice of that fact, and they may therefore lawfully presume in the absence of such notice that the authority still continues.   And it is therefore the general rule of the law that the acts of a former general agent, within the scope of   his original authority,   will, notwithstanding its revocation, continue to bind the former principal to those parties who have been and still are dealing with him in good faith in reliance upon his former authority until they have had notice of his revocation.

\*   \*   \*   \*   \*   \*   \*   \*

Section 228.   What shall be deemed sufficient notice in any case, and how it shall be given, are questions concerning which it is impossible to lay down a general rule which shall be both comprehensive and precise.   It is evident   that these questions must be largely determined by the facts and circumstances of each particular case.   \* \* \*   All must be done that may be reasonably required to make the knowledge of the revocation co-extensive with the knowledge of the authority.   The case is analogous to that of a dissolution of a partnership, and is governed by the same rules.   To all persons who have had actual dealings with the agent, actual notice must be given or such knowledge of the fact must be brought home to them as would be sufficient to put an ordinarily prudent man upon inquiry.   To persons who have had no actual dealings, notice may be given by publication in some

newspaper of general circulation. Notice by publication is sufficient even to those who have had dealings with the agent if it can be shown that they saw it; otherwise not.''

In Clark & Skyles on the Law of Agency, vol. 1, page 414, the authors state the rule thus:

''Whenever a general agency has been established for any purpose, all persons who have dealt with such agent or who have known of the agency and are apt to deal with him, have a right to presume that such authority will continue until it is shown to have been terminated in one way or another. And they also have a right to anticipate that if the principal revoke such authority they will be given due notice thereof. It is a general rule of law therefore, upon which there seems to be no conflict of authorities, that all acts of a general agent within the scope of his authority as respects third persons will be binding on the principal, even if done after revocation; unless notice of revocation has been given to those persons who have had dealings with and who are apt to have other dealings with the agent upon the strength of his former authority.''

These general principles are approved in Joyce on Insurance, Sec. 721; Wood on Insurance, Vol. 2, Sec. 432; Springfield Fire & Marine Ins. Co. v. Davis, 18 Ky. Law Rep. 654; Am. & Eng. Ency. of Law, Vol. 1, p. 1220; Capen v. Pacific Mutual Ins. Co., 64 Am. Dec., 412; Mitchum v. Bank of Kentucky, 9 Dana 166; Kennedy v. Bohannon, 11 B. Mon. 118; Gaar v. Huggins, 12 Bush 259. The last three Kentucky cases cited, deal with the subject of partners, but it is generally recognized that the principles applicable to the revoca-

tion of a general agent's authority so far as notice to the public is concerned, apply to the dissolution of a partnership, that the same character of notice is required to inform the public of the revocation of an agency as is necessary to give information of the dissolution of a partnership.

It will be further observed that a distinction is made between the notice necessary to be given to those persons who have dealt with the agent before his revocation and persons who deal with him after the revocation, but without sufficient notice of it. A different rule also obtains when the agency is special or limited to one transaction.

Without further elaboration of this point, it is sufficient to say that it was a question for the jury under proper instruction to determine whether or not Gragg had such information of the revocation of Wait's authority as would be sufficient to give a person of ordinary prudence notice that his agency had terminated. As Gragg had no previous dealings with Wait as agent for the company, he was not entitled to the same character of notice that persons who had been dealing with Wait as agent had a right to demand.

In addition to the instruction given by the court, the jury should have been instructed that it being admitted that Harry Wait was a general agent of the insurance company, having authority to issue, assign and transfer policies, if they believed from the evidence that the company had not given to the public such notice of Wait's removal as agent as was reasonably necessary to put persons of ordinary prudence on notice of his removal and that Gragg at the time he procured Wait's consent to the transfer of the policy had no notice or information sufficient to put a reasonably prudent man upon inquiry that

Wait had been removed as agent, and he in good faith believed that Wait was then the agent of the company; and further believe from the evidence that Wait, purporting to act as agent of the company, signed the transfer of the policy, they should find for the plaintiff.

If appellant can offer any evidence, independent of Wait, that Wait had continued to act as agent for the company after his removal, he should be permitted to do so; but verbal statements of Wait to this effect are not competent, although any writing received by him from the company that would throw light upon the subject would be admissible.

Wherefore, the judgment of the lower court is reversed, with directions to grant a new trial in conformity with this opinion.